C.H. ROBINSON COMPANY, Burnett Produce Company, Inc., C.L. Fain Company, General Produce, Inc., and Golman–Hayden Company, Inc., Plaintiffs–Appellants,

C.J.'s Brokerage, Georgia Tomato Co., Inc., Six L's Packing Co., Spada Distributing Company, Plaintiffs,

v.

TRUST COMPANY BANK, N.A., Trust Company Bank of Clayton County, Defendants–Appellees,

B.H. Produce Company, Inc., Bank of the South, N.A., O.A. Harmon, Georgia Ann Harmon, Iverson Brokerage Co., Milo Iverson, Defendants.

No. 90–9060.

United States Court of Appeals, Eleventh Circuit.

Feb. 6, 1992.

Stephen P. McCarron, Silver Spring, Md., for plaintiffs-appellants.

David P. Winkle, Oliver, Duckworth, Sparger & Winkle, P.C., Jonesboro, Ga., for Trust Co. Bank and Trust Co. Bank of Clayton County.

Before FAY and COX, Circuit Judges, and MORGAN, Senior Circuit Judge.

COX, Circuit Judge:

C.H. Robinson Co., Burnett Produce Co., Inc., C.L. Fain Co., General Produce, Inc., and Golman–Hayden Co., Inc. appeal the district court's grant of summary judgment in favor of Trust Company Bank (TCB) and partial summary judgment in favor of Trust Company Bank of Clayton County (TCBCC). We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Between April 16 and October 15, 1986, the appellant sellers sold perishable agricultural commodities for a total purchase price of $153,157 to B.H. Produce Co. B.H. Produce accepted the commodities but failed to pay for them. Each of the sellers subsequently filed notices with the United States Department of Agriculture to preserve their rights under the statutory trust provisions of the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499e(c). During the same period, B.H. Produce made loan payments in excess of $150,000 to the appellees TCB and TCBCC. The loan payments were made with funds subject to the PACA trust and with the proceeds of a $25,000 certificate of deposit redeemed by B.H. Produce and deposited into its general checking account.

TCB had made a total of three loans to B.H. Produce in the amounts of $8,479, $21,109, and $9,697. These unsecured loans were used to purchase insurance. After April 16, 1986, the bank received a total of $35,534 in payments on these loans.

TCBCC also made three loans to B.H. Produce. Two loans in the amounts of $17,250 and $21,572 were used to purchase luxury automobiles and were secured by the vehicles. After April 16, 1986, the bank received payments totaling $14,076 on these loans. The third loan for $160,428, which consolidated several previous business debts, gave the bank a security interest in all property of B.H. Produce, including certificates of deposit, equipment, accounts receivable, and inventories. After April 16, 1986, the bank received a total of $102,716 in payments on this loan.

The sellers sued to recover the loan payments on the ground that they were made in violation of the statutory trust. The banks moved for summary judgment on

the theory that they were bona fide purchasers without notice of any breach of trust by B.H. Produce. The district court agreed with the banks and granted summary judgment except with respect to the third TCBCC loan, which gave the bank a security interest in B.H. Produce's accounts receivable and inventory. Because the produce inventory and resulting accounts receivable constituted trust assets under PACA, the court concluded that payments on the third loan were recoverable by the trust beneficiaries.

Upon stipulations of the parties, the district court entered final judgment in favor of the sellers against TCBCC. TCBCC's liability, however, was limited to $64,495, which represented the $102,716 in payments it had received on the third loan less a $25,000 credit for the redeemed certificate of deposit and a $13,221 credit for "payments [which] were received by it while there were no perfected trusts in existence." R. 3–66–2.

On appeal, the sellers challenge the district court's grant of summary judgment in favor of TCB and partial summary judgment in favor of TCBCC. TCBCC does not cross-appeal.

## II. ISSUES ON APPEAL

The appellant sellers raise two issues on appeal. First, whether a PACA trust creditor may recover trust funds paid to a lender that does not hold a security interest in agricultural products. Second, whether a PACA trust extends to a commingled fund consisting of trust and non-trust funds.

On the first issue, the sellers argue that all lenders, secured and unsecured, should be forced to return any trust funds they might have received because they are charged with constructive notice of the trust which was created by a federal statute. The appellee banks, on the other hand, assert that constructive notice of the trust should not be extended to unsecured lenders who qualify as bona fide purchasers.

With regard to the second issue, the sellers maintain that the $25,000 from a non-trust certificate of deposit which was de-

posited into B.H. Produce's general account became commingled with the trust funds in that account and is recoverable by trust beneficiaries. The banks argue that they have met their burden of tracing the $25,000 to non-trust assets, and therefore, those funds may not be recovered by trust creditors.

## III. DISCUSSION

Under PACA, a statutory trust is created for unpaid sellers of perishable agricultural commodities. All such commodities, as well as accounts receivable or proceeds from the sale of such commodities, "shall be held by ... [the] broker in trust for the benefit of all unpaid suppliers or sellers of such commodities ... until full payment ... has been received...." 7 U.S.C. § 499e(c)(2). The first and central issue is under what circumstances may beneficiaries of a PACA trust recover trust funds paid to a third-party lender in breach of the trust.

The banks do not deny that B.H. Produce's loan payments were made with trust proceeds in violation of the statutory trust. They argue, however, that they need not return the funds because at the time they received the payments they were bona fide purchasers for value without notice of the breach. The unpaid sellers, on the other hand, maintain that the banks are obligated to return any trust funds they received, notwithstanding their bona fide purchaser status.

Under general trust principles, a bona fide purchaser receives trust property free of trust even if the property was transferred in breach of trust.

> If the trustee in breach of trust transfers trust property to, or creates a legal interest in the subject matter of the trust in, a person who takes for value and without notice of the breach of trust, and who is not knowingly taking part in an illegal transaction, the latter holds the interest so transferred or created free of the trust, and is under no liability to the beneficiary.

Restatement (Second) of Trusts § 284(1). *See also* 4 Austin W. Scott & William F. Fratcher, *The Law of Trusts*, § 284 (4th ed. 1989). To qualify as bona fide purchasers, therefore, TCB and TCBCC must show that any trust property they received was transferred "for value" and "without notice of the breach of trust."

■■■ Ordinarily, the transfer of trust assets in satisfaction of an antecedent debt is not for value. "[I]f the trustee transfers trust property in consideration of the extinguishment of a pre-existing debt or other obligation, the transfer is not for value." Restatement (Second) of Trusts § 304(1). *See also* Scott & Fratcher, *supra*, § 304. Thus, if B.H. Produce had transferred its produce inventory to TCB and TCBCC in satisfaction of its loans, the banks would have taken the inventory subject to the trust. Trust law, however, recognizes an exception to this principle if the property transferred is money. "If the trustee transfers trust property in consideration of the extinguishment in whole or in part of a pre-existing debt or other obligation, the transfer is for value, if (a) the trust property transferred is a negotiable instrument or money...." Restatement (Second) of Trusts § 304(2). The reasoning behind this exception is clear. "It is absolutely necessary for practical business transactions that the payee of money in due course of business shall not be put upon inquiry at his peril as to the title of the payor." Scott & Fratcher, *supra*, § 304 (quoting *Stephens v. Board of Education*, 79 N.Y. 183, 187 (1879)). Accordingly, the funds TCB and TCBCC received in payment on the loans were transferred for value.

■■■ TCB and TCBCC must also establish that they received the funds "without notice of the breach of trust." "A person has notice of a breach of trust if (a) he knows or should know of the breach of trust...." Restatement (Second) of Trusts § 297. *See also* Scott & Fratcher, *supra*, § 297. Here, the district court concluded that TCB and TCBCC neither knew nor should have known that the funds they received from B.H. Produce were paid in breach of trust. *C.H. Robinson Co. v.*

*B.H. Produce Co.*, 723 F.Supp. 785, 793–94 (N.D.Ga.1989). The sellers do not challenge this finding. Under general trust principles, therefore, TCB and TCBCC were bona fide purchasers and entitled to keep the loan payments free of the trust.

Applying trust principles, the district court granted summary judgment to TCB and partial summary judgment to TCBCC. The court, however, created an exception to traditional trust analysis with respect to the third TCBCC loan which was secured by B.H. Produce's accounts receivable and inventory.

> Because of the statutory purpose of protecting unpaid sellers from lenders with security interests and in view of the general trust law described above, the court will allow the plaintiff to recover funds paid to the third-party banks to the extent the banks had actual knowledge of the trust or had a security interest in the trust assets.

*Id.* at 793.

■■■ This holding is incorrect for two reasons. First, the district court erred in its conclusion that transferee liability under traditional trust law turns on "actual knowledge of the trust." As demonstrated above, a transferee takes property free of trust if he received it for value and without notice of the *breach* of trust. "If the trustee transfers trust property in breach of trust to a transferee for value, the transferee takes free of the trust although he had notice of the existence of the trust, unless he has notice that the trustee is committing a breach of trust in making the transfer." Restatement (Second) of Trusts § 296. *See also* Scott & Fratcher, *supra*, § 296. Second, the district court erroneously created an exception to general trust principles by imposing transferee liability upon lenders which happen to have a security interest in trust assets. We conclude that such an exception is inconsistent with established precedent and the intent of Congress.

In *First State Bank of Miami v. Gotham Provision Co. (In re Gotham Provision Co.)*, 669 F.2d 1000 (5th Cir. Unit B

1982),[1] First State Bank argued that the statutory trust provision of the Packers and Stockyards Act (PSA), 7 U.S.C. § 196,[2] should not be interpreted as giving trust beneficiaries an interest in accounts receivable and other assets which is superior to that of secured creditors for the purposes of distribution in bankruptcy. After reviewing the legislative history of the act, the court held that "if a lender could defeat the § 206 trust merely by taking a security interest in inventories and receivables, the clear intention of Congress would be thwarted and the trust provision of the Act would be reduced to a nullity." *Id.* at 1009. The effect of the court's decision was to relegate secured creditors to the same status as unsecured creditors vis-a-vis unpaid trust beneficiaries.

Congress made it clear that, when trust assets are distributed in bankruptcy, trust beneficiaries are to be paid first.[3] Although the loss of "secured" status relative to trust beneficiaries works to the disadvantage of banks, they can take this factor into account before lending to PACA trustees. "The Committee believes that the statutory trust requirements will not be a burden to the lending institutions.

They will be known to and considered by the prospective lenders in extending credit." H.R.Rep. No. 543, 98th Cong., 2d Sess. 4 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 407. Indeed, as the court in *Gotham* noted, albeit in another context, "the Bank had constructive knowledge of the trust because a federal statute created the trust." *In re Gotham*, 669 F.2d at 1011.[4]

■ Like any transferee, secured lenders will be forced to return trust property they have received unless they can establish their status as bona fide purchasers, i.e., that they received the property for value and without notice of breach of trust.[5] *See, e.g., McLean Cattle Co. v. Culton, Morgan, Britain & White (In re Harmon)*, 11 B.R. 162 (Bankr.N.D.Tex. 1980) (requiring attorney to return that portion of cash retainer which was unearned at the time he discovered the funds had been transferred in breach of trust). As discussed above, transfers of trust property such as accounts receivable are not for value under traditional trust law. *See* Restatement (Second) of Trusts § 304(1); Scott & Fratcher, *supra*, § 304.

1. The Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982).

2. PACA trust provisions were modeled after those in the PSA, and Congress specifically intended that established precedents under the PSA be used to interpret PACA. *In re Fresh Approach*, 48 B.R. 926, 931 (Bankr.N.D.Tex. 1985).

3. Trust assets are actually exempt from the bankruptcy estate, and all trust beneficiaries must be paid in full before any remainder is distributed to secured creditors. *East Coast Potato Distributors v. Grant (In re Super Spud, Inc.)*, 77 B.R. 930, 931–32 (Bankr.M.D.Fla.1987).

4. Lenders have constructive knowledge of the priority status of unpaid trust beneficiaries in much the same way that a second mortgagee is charged with constructive knowledge of a properly recorded first mortgage even if the second mortgagee lacked *actual* knowledge of the prior mortgage. Constructive notice of the trust for the purposes of bankruptcy distribution, however, is not the same as "constructive" notice of breach of trust for purposes of determining bona fide purchaser status, despite appellants'

suggestion to the contrary. Brief of Appellants at 14–15. Indeed, "[t]he term 'constructive [notice of breach]' ... is not a happy one, and its employment generally leads to loose thinking. It seems more accurate to say that a person has notice of a breach of trust when he has actual knowledge of the breach or when he has knowledge of such facts that he should ascertain by inquiry whether the trustee is committing a breach of trust." 4 Austin W. Scott & William F. Fratcher, *The Law of Trusts*, § 297 (4th ed. 1989).

5. When secured lenders use their security agreement to foreclose on property or otherwise enforce their contractual rights, they essentially force the transfer of trust property in satisfaction of an antecedent debt. Any such transfer, including transfers of negotiable instruments and money, through the exercise of rights under a security agreement is not for value. Most trust assets such as inventory or accounts receivable will be converted to money before being transferred. To hold otherwise would essentially permit secured creditors to "trump" unpaid beneficiaries of PACA trusts by simply enforcing their security agreement outside of the formalities of bankruptcy. *See In re Gotham*, 669 F.2d at 1009.

Thus, in *Gotham* the bank was forced to return payments on accounts receivable which it had received in satisfaction of its secured loan. *In re Gotham*, 669 F.2d at 1010. *See also Bast v. Orange Meat Packing Co. (In re G & L Packing Co.)*, 41 B.R. 903 (N.D.N.Y.1984) (holding that accounts receivable collected by the bank were recoverable by trust beneficiaries). In the case at bar, on the other hand, TCBCC never enforced its security agreement. It did not collect B.H. Produce's accounts receivable or take possession of inventories which were subject to the PACA trust. It merely received cash loan payments without notice that they were made in breach of trust. *C.H. Robinson*, 723 F.Supp. at 794. Accordingly, TCBCC should have been permitted to retain the payments. *See, e.g., Forestwood Farm, Inc. v. Tanner (In re Tanner)*, 77 B.R. 897 (Bankr.N.D.Ala.1987) (holding that PACA does not authorize tracing of funds paid to third parties in the ordinary course of business).

The district court, however, transcended traditional trust analysis and, in effect, held that lenders are strictly liable to the extent that they have a security interest in trust assets. This is contrary to both the cases discussed above and legislative intent. Congress has provided the unpaid sellers of perishable agricultural commodities with the benefits of a statutory *trust.* 7 U.S.C. § 499e(c). Absent specific instructions to the contrary, Congress must have intended for such a trust to operate according to the settled principles of trust law. *See generally* H.R.Rep. No. 543, 98th Cong., 2d Sess. (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 405. There is no legitimate basis for creating a special exception to these principles for secured lenders. Secured lenders are not guarantors of PACA trusts. Indeed, their "secured" status is effectively vitiated by PACA in favor of unpaid trust beneficiaries. The district court's imposition of strict liability has the ironic effect of placing TCBCC, the secured lender, in a worse

position than TCB, whose loans were unsecured.[6] We decline to endorse such a rule. Because TCBCC received funds from B.H. Produce for value and without notice of breach of trust, it was a bona fide purchaser and entitled to retain the payments. TCBCC, however, neither cross-appeals nor argues that the district court erred in imposing liability on it. Accordingly, this court must affirm the judgment of the district court.

With respect to the second issue, the appellants argue that the district court erred in granting TCBCC a $25,000 credit for the non-trust certificate of deposit which was deposited into B.H. Produce's general checking account. We need not decide this question. Assuming that the district court erred in granting such a credit, it was harmless error. As discussed above, TCBCC should not have been required to return any of the payments it had received on the third loan. The sellers, therefore, suffered no prejudice from TCBCC's $25,000 credit. *See Securities and Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943) (decision of lower court must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason).

## IV. CONCLUSION

For the reasons discussed above, the grant of summary judgment in favor of TCB and partial summary judgment in favor of TCBCC is affirmed.

AFFIRMED.

---

**6.** The district court does not resolve the inherent contradiction in charging TCBCC with notice of B.H. Produce's breach of trust regarding the secured loan but not imputing such notice on the *same institution* with respect to the two unsecured loans. *See C.H. Robinson Co.*, 723 F.Supp. at 794.