**A & J PRODUCE CORP.,
et al., Plaintiffs,**

v.

**CIT GROUP/FACTORING, INC. and
Elliot Merberg, Defendants.**

No. 91 Civ. 5227 (LBS).

United States District Court,
S.D. New York.

Aug. 19, 1993.

McCarron & Associates, Silver Spring, MD (Steven A. Rafkin, Stephen P. McCarron, of counsel), Callan, Regenstreich, Koster & Brady, New York City (Warren S. Koster, Kenneth S. Merber, of counsel), for plaintiff Fresh Western Marketing, Inc.

Mark C.H. Mandell, New York City, for plaintiffs Endico, McCain & UFS Indust.

Blum, Gersen & Stream, New York City (Sherylee F. Bauer, of counsel), for plaintiff Inn Foods, Inc.

Leonard Kreinces, Great Neck, NY, for all other plaintiffs.

Kreindler & Relkin, P.C., New York City (Donald B. Relkin, Michael J. Gerstein, David H. Relkin, of counsel), for defendant CIT Group/Factoring, Inc.

Finkel, Goldstein, Berzow & Rosenbloom, New York City, for defendant Elliot Merberg.

SAND, District Judge.

This action is brought under the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499, by forty-four dealers in fresh fruits and vegetables against Elliot Merberg, the president of the now bankrupt entities N. Merberg & Son, Inc. and Diversified Food Service Distributors, Inc., ("the Merberg companies") and its secured lender, CIT

Group/Factoring, Inc. ("CIT").[1] Currently before the Court are a number of motions: (1) plaintiffs' motions to strike defendant CIT's sixth affirmative defense and for a protective order as to certain discovery demands; (2) defendant CIT's motion for summary judgment against certain plaintiffs for failure to comply with PACA's requirements to preserve trust assets; (3) defendant CIT's motion for summary judgment against certain plaintiffs or to reduce the amount of PACA claims; and (4) plaintiffs' motions for summary judgment for the amounts set forth on the list promulgated by the Secretary of Agriculture or in the alternative for summary judgment as to liability only.

### Factual Background

The predecessor corporation of defendant CIT entered into an accounts receivable financing agreement with the Merberg companies dated January 1, 1985. To secure that arrangement, on March 7, 1989, the parties entered into an inventory security agreement. The accounts receivable agreement evidences an arrangement whereby CIT agreed to advance funds based upon an assignment of the accounts receivable of the Merberg companies.

The plaintiffs are dealers in perishable agricultural goods which sold produce to the Merberg companies, which in turn sold to restaurants and other facilities. The bulk of the transactions at issue took place between February and May of 1991. The Merberg companies filed for bankruptcy on May 10, 1991. It is undisputed that the plaintiffs were not paid by the Merberg companies, although there are questions regarding the amount that certain plaintiffs are owed. With regard to certain other plaintiffs, a question arises whether the goods sold qualify as "perishable" under the Act. Although the parties disagree as to the proper characterization of the arrangement, the evidence demonstrates that CIT collected the accounts receivable and reduced the amount owed by the Merberg companies to CIT by approximately two million dollars in the period immediately preceding and subsequent to the bankruptcy.

### PACA

PACA regulates trading in perishable agricultural commodities, essentially fruits and vegetables. The Act was amended in 1984 upon a finding by Congress that a burden on commerce in these goods was caused by certain financial credit arrangements, whereby dealers would receive delivery of goods without having made payment for them. The 1984 amendment provides that upon delivery of goods to the purchaser, a statutory trust automatically arises on behalf of unpaid suppliers or sellers. The relevant portion of the statute, 7 U.S.C. § 499e(c)(2), reads as follows:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transac-

---

1. CIT argues that N. Merberg & Son and Diversified Food Services are different entities, and that CIT held a security interest only in the former's accounts receivable and inventory. While on the surface there appears to be a dispute, upon examination it is apparent that Merberg used the trade name of "Diversified Food Service Distributors" throughout the period at issue in this action. Plaintiffs provide copies of UCC filings in which CIT lists the debtor as "Diversified Food Service a t/n [trade name] of N. Merberg & Son, Inc." Clearly, CIT was aware that Merberg used both of these names when conducting business. Furthermore, on March 7, 1989, CIT and N. Merberg & Son amended the accounts receivable agreement to provide that the agreement would cover sales under all trade names, specifically including "Diversified Foodservice." Although somewhat at odds with the notion that Diversified is a trade name of N. Merberg, Elliot Merberg filed an affidavit in the bankruptcy proceeding in which he averred that he was the president of Diversified Foodservice Distributors, Inc., and that N. Merberg & Son, Inc. is its subsidiary. In any event, it is not genuinely in dispute that the PACA dealers were conducting business with Merberg entities, and that CIT held a security interest in the accounts receivable of both N. Merberg & Son and Diversified Foodservice. While the parties may have engaged in less than pristine recordkeeping in this regard, we believe the issue is a red-herring.

tion, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

PACA imposes a floating non-segregated trust, such that a purchaser is not required to segregate trust assets and a seller is not required to trace the assets specifically to the purchase of the produce. The statute further provides that to preserve one's rights as a beneficiary of a PACA trust, notice must be given by the seller to the dealer and the Secretary of Agriculture

> within thirty calendar days (1) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary [which time is ten days from the date of receipt of the goods], (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction.

7 U.S.C. § 499e(c)(3).

The regulations promulgated pursuant to this section provide that the maximum time upon which parties may agree for payment and still have the benefit of PACA protection is thirty days from the date of receipt and acceptance of the goods. 7 C.F.R. § 46.46(f)(1) & (2). As will be discussed in more detail below, any agreement to extend the terms of payment for more than the ten days allotted in the statute must be in writing—no oral modification is recognized.

*Motion to Strike Sixth Affirmative Defense*

Plaintiffs' initial motion, intended to narrow the discovery and focus the issues, was a motion to strike CIT's Sixth Affirmative Defense. Although we dispose of this action on summary judgment, the questions raised by the motion to strike pertain directly to the subsequent cross-motions for summary judgment.

CIT's defense is essentially that certain plaintiffs have lost the protection of the PACA trust because over their course of dealing with Merberg, and through oral agreements, they extended the time for payment past the thirty-day maximum allowed

by the statute. To support this argument, CIT relies almost entirely on one case, *In re Lombardo Fruit & Produce*, 107 B.R. 952 (Bky.E.D.Mo.1989), a decision which was subsequently reversed, 150 B.R. 941 (Bky.E.D.Mo.1993) in light of *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777 (8th Cir. 1991).

The Eighth Circuit was the first appellate court to rule on the question of the effect of oral agreements on a produce seller's rights to PACA trust protection. In *Hull*, the parties had entered into oral agreements to pay for perishables not in ten days, but in forty-five and thirty days. The court ruled:

> oral agreements have no effect on produce sellers' trust protection. The statute and regulations clearly contemplate that the parties must set forth such agreements in writing to be effective … Thus, notwithstanding the oral agreements, both sellers retained the right to demand payment within ten days and seek trust protection under PACA.

*Id.* at 781–82.

A recent case in the Eastern District of New York also rejects the course of dealing defense. In *Mid–Valley Produce Corp. v. 4-XXX Produce Corp.*, 819 F.Supp. 209 (E.D.N.Y.1993), the plaintiffs had extended the defendant's payment terms by written agreement to 20 and 30 days. However, the evidence demonstrated that the defendant paid plaintiffs for the produce well beyond those time periods. The defendant, like CIT here, relied on *Lombardo* to assert that the "course of dealing" among the parties indicated that the sellers had waived their PACA rights by extending the terms of payment beyond 30 days from date of delivery. The court, citing *Hull* and the latest *Lombardo* decision, granted summary judgment against the defendant, holding that "where … plaintiffs comply with the written requirements of PACA's trust provisions, defendants' 'course of dealing' defense must be rejected." 819 F.Supp. at 212.

Turning to the facts of the case before us, CIT claims that twenty-five of the plaintiffs had invoices which stated terms in excess of the ten days provided in the regulations and moreover, that the plaintiffs entered into oral

agreements with the Merberg companies to extend payment beyond the thirty-day maximum. CIT does not claim that, nor has there been any evidence submitted to indicate that, any of the plaintiffs entered into *written agreements* to extend the terms of payment past the thirty-day maximum. CIT's discovery requests seek to obtain records from the plaintiffs in order to establish a course of dealing defense, and it is regarding this discovery request which plaintiffs seek a protective order. CIT's motion for summary judgment against these twenty-five defendants also rests on the ground that these plaintiffs have waived their PACA rights.

■ We find that defendant CIT's course of dealing defense is insufficient as a matter of law. A produce seller does not lose PACA rights as a beneficiary of the trust, assuming the seller has complied with the procedures to perfect those rights (as we shall discuss shortly) by oral agreement or by a course of dealing. The only waiver of rights which the statute allows is a written agreement to extend terms beyond thirty days. CIT does not allege that there were such written agreements or that discovery would uncover such agreements. Significantly, Elliot Merberg never testified in deposition that any written agreements existed. CIT seeks discovery essentially to substantiate a course of dealing defense based upon historical records of business transactions. Such a defense cannot prevail and the discovery therefore is unwarranted.

### CIT's First Motion for Summary Judgment

In response to plaintiffs' motion for a protective order, defendant CIT cross-moved for summary judgment against twenty-five plaintiffs on the ground that they failed to preserve their rights under PACA by extending the credit terms past thirty days. CIT further contends in its second motion, which we will discuss below, that certain of these plaintiffs also failed to give timely notice to the Merberg companies and to the Secretary of Agriculture and have thereby lost their PACA rights.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the supporting evidence demonstrates that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. The court does not resolve disputed issues of fact, but rather, resolving any ambiguities and drawing all reasonable inferences against the moving party, assesses whether genuine issues of material fact remain for the trier of fact. *See, e.g. Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

We find that CIT's first motion for summary judgment must be denied because it is insufficient as a matter of law. As discussed above, although the precise terms of the produce sales as modified by a course of dealing between the parties are unclear, those terms are immaterial because the course of dealing defense is not cognizable under the statute. Having failed to provide evidence of written agreements between the parties extending the payment terms beyond thirty days, plaintiffs are entitled to enforce their right to payment within 10 days from date of delivery of the goods or within such period of time, up to 30 days from date of delivery, that the parties have agreed to in writing prior to the transaction.

### CIT's Second Motion for Summary Judgment/Plaintiffs' Motions for Summary Judgment

We discuss the remaining motions in tandem, because they involve many of the same issues. Before turning to the question of whether plaintiffs have complied with the statute to preserve their rights and have proven the precise amount of damages they are owed, we turn to the question of defendant CIT's liability.

■ Preliminarily, we note that Elliot Merberg has filed no papers either on his own behalf or in response to any of the motions. As sole shareholder and fiduciary of a PACA trust, Merberg would be personally liable for any breach of that trust. As we recently had occasion to explain, in *Okun*

*v. Zimmerman,* 814 F.Supp. 346, 348 (S.D.N.Y.1993):

> PACA establishes a statutory trust for the benefit of sellers and suppliers. This trust arises from the moment perishable goods are delivered by the seller. An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act. This legal framework is to be distinguished from the piercing the veil doctrine, where the corporate form is disregarded because the individual has either committed a fraud, or because the corporation is a "shell" being used by the individual shareholders to advance their own purely personal rather than corporate ends.

■ The imposition of liability against the Merberg companies' secured lender, CIT, is a more difficult question. CIT argues that a secured lender should not be held as a guarantor of a PACA dealer, and that a third party which is a good faith purchaser for value without notice of a breach of trust cannot be held liable. Although we agree that CIT states a valid proposition under the law, we find that CIT does not qualify as a good-faith purchaser for value.

Both sides rely on *C.H. Robinson Co. v. Trust Co. Bank, N.A.,* 952 F.2d 1311 (11th Cir.1992), and we agree that the court's analysis applies here. In *Robinson,* the produce dealer purchased produce and failed to pay for it. The sellers filed timely PACA notices, and thereby preserved their rights as beneficiaries. During the same time period, the dealer made loan payments to its two creditor banks with funds subject to the PACA trust. With regard to one loan, the bank held a secured interest in the accounts receivable and inventory of the dealer, but the dealer paid the bank with negotiable instruments and the bank never foreclosed on that security interest.

The *Robinson* court held that general trust principles govern in PACA cases, and that a bona fide purchaser receives trust property free of trust even if the property was transferred in breach of trust if the purchaser did not have notice of the breach of trust. This reading of the statute serves to protect third parties, such as landlords or other creditors, from disgorgement of trust funds which were accepted in satisfaction of antecedent debts and without knowledge of breach of the PACA trust. To prevail therefore, CIT must demonstrate that it was (1) a purchaser for value and (2) did not have notice of breach of trust.

■ CIT acknowledges that a transfer of trust assets in satisfaction of an antecedent debt is not for value, with the exception of a transfer of a negotiable instrument or money. With that principle in mind, CIT argues that the accounts receivable financing, whereby CIT lent money to the Merberg companies in exchange for the accounts receivable, is a transfer for value because it is not the satisfaction of an antecedent debt, but is instead a "contemporaneous exchange." We find this "spin" on the arrangement unpersuasive. As the *Robinson* court explained, 952 F.2d at 1315:

> Like any transferee, secured lenders will be forced to return trust property they have received unless they can establish their status as bona fide purchasers, i.e., that they received the property for value and without notice of breach of trust. [Footnote and citation omitted.] As discussed above, transfers of trust property such as accounts receivable are not for value under traditional trust law.

The court elaborated on this concept in a footnote which bears emphasis:

> When secured lenders use their security agreement to foreclose on property or otherwise enforce their contractual rights, they essentially force the transfer of trust property in satisfaction of an antecedent debt. Any such transfer, including transfers of negotiable instruments and money, through the exercise of rights under a security agreement is not for value. Most trust assets such as inventory or accounts receivable will be converted to money before being transferred. To hold otherwise would essentially permit secured creditors to "trump" unpaid beneficiaries of PACA trusts by simply enforcing their security

agreement outside of the formalities of bankruptcy.

*Id.* at 1311, n. 5.

In *Robinson,* the bank did not enforce the security agreement by collecting accounts receivable or taking possession of inventory. Instead, the bank received cash loan payments, which the court found to be transfers for value and without notice of the breach of trust. CIT, in contrast, did not receive cash loan payments, but in fact advanced loans and in return took over the accounts receivable of the Merberg companies pursuant to the security agreements. Such a transfer is not "for value," and if plaintiffs satisfy the other elements of their causes of action, CIT will not be shielded from liability. Nothing in this ruling alters the principle that a dealer is liable for trust assets paid to third parties, *Okun,* or the principle that a third party who receives trust assets for value and without notice of breach of trust is not liable for those assets, *Robinson.* CIT stands in different shoes.[2]

■ We turn now to the plaintiffs' motions for summary judgment, addressing first the claims of Endico, McCain and UFS (Sally Sherman Foods). Both Endico and UFS claim that they are entitled to protection under PACA for the sale of products derived from perishable agricultural commodities. Although we believe Congress intended broad protection for dealers in perishable agricultural commodities, we cannot accept this enlargement of the scope of the statute.

Endico and UFS argue as follows: although the Act defines the covered goods as fresh fruits and vegetables of every kind and character, whether or not frozen or packed in ice, the *trust* extends to "food or other products derived from perishable agricultural commodities." Because the trust is broader, plaintiffs argue that sellers of derived products, such as breaded cauliflower, or coleslaw, are also protected, and the purchaser of such goods must hold the assets derived from these goods in trust for the unpaid supplier.

We find this leap of logic untenable. The regulations promulgated pursuant to the statute define a perishable or agricultural commodity as follows:

> Fresh fruits and vegetables include all produce in fresh form generally considered as perishable fruits and vegetables, whether or not packed in ice or held in common or cold storage, but does not include those perishable fruits or vegetables which have been manufactured into articles of food of a different kind or character. The effects of the following operations shall not be considered as changing a commodity into a food of a different kind or character: Water or steam blanching, chopping, color adding, curing, cutting, dicing, drying for the removal of surface moisture; fumigating, gassing, heating for insect control, ripening and coloring, removal of seed, pits, stems, calyx, husk, pods, rind, skin, peel, et cetera; polishing, precooling, refrigerating, shredding, slicing, trimming, washing with or without chemicals; waxing, adding of sugar or other sweetening agents; adding ascorbic acid or other agents used to retard oxidation; mixing of several kinds of sliced, chopped, or diced fruits or vegetables for packaging in any type of containers; or comparable methods of preparation.

7 C.F.R. § 46.2(u).

The trust must cover a broader category of goods, i.e. the products derived from perishable produce, if the statute is to afford any protection whatsoever to suppliers; otherwise, all the purchaser would need to do is

---

**2.** See also *In re Gotham Provision Co., Inc.,* 669 F.2d 1000, 1010 (5th Cir.1982), a case brought under the Packers and Stockyards Act upon which PACA is based, wherein the court held: so long as ... sellers remain unpaid for their livestock sold to a packer ... that packer must hold his inventories, accounts receivable and proceeds derived from ... sales for the benefit of the ... sellers until such time as they are fully paid. Where the packer has given a lender a security interest in inventories or receiva-

bles that are subject to the [statutory] trust, the unpaid cash sellers have priority over those assets and may recover the proceeds of those receivables to the extent of the outstanding balance ... In this case ... the Bank must return to the appellees from the payments on the accounts receivable which were applied to reduce the balance of the Bank's loan to Gotham the amount necessary to compensate the appellees in full for their cash sales to Gotham.

process the fresh produce he receives to be free of any PACA liability. Plaintiffs attempt to reason backwards from the nature of the trust to the proposition that the protected produce should also include perishable products made from fresh fruits and vegetables. This is improper under the statute and the regulations, which clearly restrict protection to unprocessed or very minimally processed fruits and vegetables. The minor processing which the regulations suggest is acceptable relates mostly to a change in form which does not change the essential nature of the item, such as slicing, or a change which is meant only to temporarily preserve the fruit or vegetable, such as freezing or adding a preservative chemical.

Plaintiffs betray the fallacy of their position in their brief, where they argue that

the Merberg company, as a licensee and statutory trustee under the Act, purchased commodities derived from fresh or frozen fruits and vegetables, and thus knew that it was purchasing goods to which the Act's statutory trust had already attached. The Merberg company was thus a mere subsequent trustee with regard to Plaintiffs' commodities, and, until it paid for the goods, would be liable to turn them (or their proceeds) over to Plaintiffs' suppliers.

As plaintiffs here accurately state, the Merberg companies may be liable as third parties which have received trust assets, (unless they are bona fide purchasers for value without notice of the breach of trust,) obligated to disgorge profits to *plaintiffs' suppliers* of fresh fruits or vegetables, but they would not be liable to plaintiffs. The chain is broken when the fresh fruits or vegetables are transformed into an essentially different product. We recognize that this will mean that sellers of products derived from fresh fruits and vegetables will be constrained to enforce their rights under general contract law and will be ordinary creditors instead of enjoying the preferred status of the PACA creditor. However, this appears to be the design of the statute, and as we have pointed out with regard to PACA before, *Okun*, 814 F.Supp. at 348–49, it is Congress' duty to amend the statute if this is not the intended result.

We now turn to the facts surrounding these specific transactions. Endico claims it has preserved its right to $70,026.86, representing sums owed for transactions from April 1, 1991 to May 6, 1991, the period forty days prior to its mailing of a PACA notice on May 10, 1991. Merberg acknowledges receipt of the PACA notice. The U.S.D.A. qualified claims in the amount of $10,659.10; Endico has challenged the U.S.D.A.'s determination, on the ground that it was based on a misunderstanding of Endico's method of processing potatoes.

Endico has submitted an affidavit in which Robert Hanna, sales manager, avers that Endico sold Merberg many types of potatoes, included sliced potatoes, potato skins for stuffing, and diced potatoes, as well as products derived from fresh commodities, including frozen onion rings, breaded cauliflower, zucchini sticks etc. Hanna further avers that the frozen potato products were blanched and heated briefly to prevent them from turning black when frozen, and that some of the potato products were sprayed lightly with oil at the request of customers.

Endico is entitled to PACA trust protection only for those products which have not been manufactured into a food product of a different kind or character. However, the Court is unable on the basis of the invoices to determine precisely which Endico products are subject to PACA protection and which ones are not. We therefore direct Endico to submit an affidavit and order on notice by September 15, 1993, which encompass only the fresh or frozen fruits and vegetables which it sold in the relevant time period to the Merberg companies. The regulations permit blanching, and the order may therefore include the french fry products which were blanched. However, although it is a close question, we find that those potato products which were treated with oil have been essentially changed and are not covered, since the addition of the oil was not meant to preserve the product but to prepare it for a certain type of cooking. Furthermore, the order is not to encompass any of the processed foods such as the zucchini sticks, hashbrowns, and breaded cauliflower, because those products have undergone a

fundamental change from the fresh state of the vegetables. Should further proceedings be necessary with regard to the Endico claim, the parties are to inform the Court.

■ Plaintiff McCain seeks to enforce its rights under PACA for a single shipment of frozen potatoes on December 31, 1990. McCain filed a timely PACA notice, which Merberg admits was received, and the U.S.D.A. has qualified the claim in the full amount of $15,094.96. Paul Ouellette, credit manager, in an affidavit submitted with the motion, describes McCain's process of peeling, cutting, blanching, removing the surface moisture by briefly heating, and then freezing the potatoes—all processes sanctioned by the regulations and which do not change the nature of the potatoes. Significantly, McCain does not spray the potatoes with oil. We find that McCain has preserved its PACA rights, and is entitled to the full amount of its claim.

■ Plaintiff UFS (Sally Sherman Foods) is in much the same position as Endico. It seeks money due to it for the sale of prepared salads which contain fresh fruits and vegetables in varying percentages, ranging from potato salad with vegetables representing 86 percent, to cream cheese with scallions, where the vegetables represent only 4 percent. The U.S.D.A. did not qualify any of UFS's claim. For the same reasons stated with regard to Endico, we find that the products sold by UFS do not qualify as perishable agricultural commodities under the Act, and UFS' claim is therefore denied.

We turn now to the remaining plaintiffs. In the Complaint, plaintiffs set forth claims in excess of two million dollars; the U.S.D.A. subsequently produced its qualification list wherein certain of the claims were greatly reduced or disallowed entirely because of deficiencies in the notice filings. The total amount qualified with regard to the named plaintiffs, including the Endico and McCain claims with which we have already dealt, was approximately $940,000. Defendant CIT's motion sought to limit the claims to those amounts listed on the U.S.D.A. list. Counsel for the majority of the plaintiffs now presses its claims only for those amounts set forth on the U.S.D.A. list.

While there would thus appear to be consensus as to the claims of the remainder of the plaintiffs, at oral argument counsel for CIT stated that in fact he believed the correct amount of the claim was closer to $250,000. This assertion appears to be based in large part on defenses which we have already rejected, namely that the "course of dealing" of the parties was a waiver by certain plaintiffs of PACA rights, and that some of the plaintiffs filed against Diversified Food Services (or some variation on that name) instead of N. Merberg & Son. In light of plaintiffs' consent, we grant defendant's motion to limit the PACA claims to those amounts listed on the U.S.D.A. list.

In so doing, we eliminate the claims of those named plaintiffs whose PACA claims were entirely disallowed by the U.S.D.A. or not on the U.S.D.A. list at all, on the ground that counsel for those plaintiffs has conceded to the amounts on the list. Those plaintiffs who therefore will not recover are the following: Algin Import & Export, Inc., Amigo Foods, Bronia Produce, Inc., Fresh Network, Hudson Valley Apple Products, Co., Hunts Point Tomato Co., Inc., Rigby Produce, Inc., and A.J. Trucco Co., Inc.

As to those plaintiffs whose claims are challenged only on the two insufficient grounds stated above, namely that they filed against the wrong entity or had terms outside the PACA protection, we find that there is no genuine issue of material fact requiring trial. The defendants do not seriously dispute that these plaintiffs filed timely PACA notices, and defendant Merberg had admitted that he received the notices. We therefore grant the plaintiffs' motion for summary judgment in the amount indicated on the U.S.D.A. list. Those plaintiffs are: Amalgamated Produce, Inc., Coosemans Specialties, Inc., D'Arrigo Bros. Co. of New York, Inc., Fierman Produce Exchange, Inc., H & M Fleisher, Inc., Fresh Western Marketing, Inc., Fruit Salad, Inc., Inn Foods, Inc., J & S Produce, T.M. Kovacevich, Inc., Maine Farmers Exchange, Mouyios Co., Inc., Sansu Produce Co., Inc., H. Schnell & Company, Inc., Sciandra International Ltd., Shapiro & Cohen, Inc., Square Produce Co., Inc., Martin

Striks & Son, Inc., Vita–Wellbrock–Kearney, Inc., Wishnatzki & Nathel, Inc., and Harry Zimmerman, Inc.[3]

CIT however also argues that the Merberg records indicate that certain of the claims have been inflated, amounting to an overcharge of almost $50,000. The claims which are allegedly inflated are those of the following plaintiffs: A & J Produce Corp., B.T. Produce, Inc., E. Armata, Inc., Goodie Brand Packing Corp., M & M Produce Farms and Sales (as noted in n. 3, not a named plaintiff herein), Morris Okun, Inc., M & R Tomato Distributors, N. Pugach, Inc., Prevor Marketing International, Inc., Post & Taback, Inc., and Rubin Bros. Produce Corp. As to these plaintiffs, we grant the motion for summary judgment as to liability only, and we will conduct further proceedings to determine the exact amount of damages owed to these plaintiffs.

Finally, although we also grant the motion for summary judgment as to liability of Finest Fruits, Inc. and M. Trombetta & Sons, Inc., there is a disputed issue of fact regarding the credit due CIT for produce which was reclaimed by those plaintiffs from the Merberg companies after the bankruptcy and resold. Both plaintiffs have filed affidavits admitting that the claims qualified by the U.S.D.A. should be reduced; Finest Fruits by $18,155.97, and Trombetta by $4,151. CIT contends that the amounts of the credit should be higher, but does not submit any accountings.[4] Further proceedings are therefore necessary with regard to these two plaintiffs.

## Conclusion

For the reasons stated above, plaintiffs' motions to strike the sixth affirmative defense are granted; defendant's motion for summary judgment based on the "course of dealing" defense is denied; defendant's motion to limit the claims to the amounts qualified by the U.S.D.A. is granted, with the exception of the Endico claim as discussed above; and plaintiffs' motions for summary judgment are granted as to some plaintiffs and granted on liability only as to other plaintiffs, against both defendants jointly and severally. The parties are to inform the Court as of September 15, 1993 of the nature of the further proceedings necessary to resolve those matters which remain outstanding.

SO ORDERED.

---

**3.** We note in this regard that plaintiffs' counsel submitted affidavits of representatives of three companies, Club Chef, Inc., M & M Produce Farms and Sales, and Stanley Orchards, indicating that they had filed notices to preserve PACA rights. All three companies are listed on the U.S.D.A. list as a qualified PACA claimants. However, although counsel refers to these entities as plaintiffs in this action, they are not listed in the caption of the Complaint. Therefore, we will make no ruling with regard to those entities; counsel may take up this matter in subsequent proceedings if appropriate.

**4.** Kenneth Wendler, Assistant Vice President of CIT, further avers that other plaintiffs reclaimed produce, but he does not present any evidence at all to substantiate his statement and we therefore do not entertain that claim.