In re LOMBARDO FRUIT AND PRODUCE COMPANY, Debtor.

TOM LANGE COMPANY, INC. Plaintiff–Appellant,

Pupillo Brokerage Company, Plaintiff,

v.

LOMBARDO FRUIT AND PRODUCE COMPANY; Uni–Fin Corporation; Defendants–Appellees.

In re LOMBARDO FRUIT AND PRODUCE COMPANY, Debtor.

TOM LANGE COMPANY, INC. Plaintiff–Appellee,

Pupillo Brokerage Company, Plaintiff,

v.

LOMBARDO FRUIT AND PRODUCE COMPANY, Defendant,

Uni–Fin Corporation, Defendant–Appellant.

Nos. 93–1894, 93–1897.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1993.

Decided Dec. 28, 1993.

Rehearing Denied Feb. 4, 1994.

Stephen P. McCarron, Washington, DC, argued, for plaintiff-appellant.

Jeffrey Blumenthal, Chicago, IL, argued, for defendants-appellees.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Tom Lange Company ("Lange") appeals the district court's affirmance of the bankruptcy court's judgment denying its claim for trust protection under the Perishable Agricultural Commodities Act ("PACA"). Though judgment in its favor was affirmed by the district court, Uni–Fin cross-appeals the district court's rejection of the bankruptcy court's analysis. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

Beginning in 1986, Lange sold Lombardo produce under an account numbered by Lange as 143. In January 1988, the parties entered a written agreement stating that the credit terms for all transactions were net thirty days from the date of shipment. However, all of the invoices stated that invoices were considered overdue if not paid within forty-five days. Lange sent Lombardo statements for account 143 on a weekly basis; the statements, like the invoices, reflected that payment was due within forty-five days. In reality, Lombardo paid only one of the 120 transactions within the thirty days required by the parties' written agreement.

On July 2, 1988, Lange stopped selling produce to Lombardo because Lombardo owed Lange over $400,000. The following October, in an attempt to help Lombardo with its financial difficulties, Lange purchased eleven of Lombardo's produce stalls, then leased them back to Lombardo for three years. One of the lease's provisions gave Lombardo an option to repurchase nine of the stalls, at the same sales price, if its accounts with Lange were current. If it was unable to exercise the option, Lombardo had thirty days to notify Lange of its desire to renew the lease. The parties also agreed in writing to extend the time for payment on account 143 by an additional twenty weeks.

Once the transactions involving the stalls had been executed, Lange resumed selling produce to Lombardo. In order to distinguish future transactions from the ones in account 143, business was conducted under account 466. By this time, however, Lange had changed its invoices and weekly statements to reflect that payment was due within thirty days. Lange supplied Lombardo with sixty-one loads of produce under account 466; over $240,000 remains unpaid.

Lombardo filed for bankruptcy, and Lange filed an adversary complaint seeking to preserve and enforce its PACA trust status. The complaint was opposed by Uni–Fin, which holds a first perfected security interest in Lombardo's accounts receivable. The bankruptcy court rejected Lange's claims of trust protection for both accounts. After a hearing, the court held "that the parties'

terms of payment were dictated by the parties' course of dealing rather than their sham written agreement." *In re Lombardo Fruit & Produce Co.*, 107 B.R. 952, 958 (Bankr. E.D.Mo.1989). The terms of the agreement gleaned from the parties' course of dealing did not comply with the requirements of PACA and its regulations, so trust protection was denied. The court further held that the parties' modification extending the payment terms violated PACA. Finally, the court held that "Lange acquired substantial equity through its purchase of the Lombardo stalls" by paying less than the stalls were worth, *id.* at 955, meaning that "Lange had a line of credit up to $150,000." *Id.* at 960. It further reasoned that because the option could be exercised only if Lombardo's produce accounts were current, payment for the produce was actually due anytime before the option expired; the option expired in three years, so payment for the produce was due within three years.

The district court rejected the bankruptcy court's reliance on the parties' course of dealing, reasoning that our intervening decision in *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777 (8th Cir.1991), barred consideration of anything other than the written agreements. However, the district court affirmed the bankruptcy court's alternative bases for denying Lange trust protection. Lange appeals the denial of its trust protection, and Uni–Fin cross-appeals the district court's rejection of the course of dealing analysis.

## II. DISCUSSION

### A. PACA's Provisions

■ Due to the scarcity of case law on the subject, it is helpful to begin with a brief overview of PACA. PACA was designed to protect small farmers and growers from "'the sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities.'" *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 780 (8th Cir.1991) (quoting *Chidsey v. Guerin*, 443 F.2d 584, 587 (6th Cir.1971)). In 1984, Congress amended PACA because sellers of fresh produce were unsecured creditors and thus had no protection in light of the produce buyers' practice

of granting lending institutions security interests in their accounts receivable. H.R.Rep. No. 543, 98th Cong., 2d Sess. 3 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 407. Congress declared this practice to be a burden on interstate commerce, 7 U.S.C. § 499e(c)(1) (1988), and decreed that sellers of perishable agricultural commodities were protected by a trust "until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers [or] sellers...." *Id.* § 499e(c)(2). The trust extends only to the "receivables or proceeds from the sale of such commodities and food or products," and establishes "a Nonsegregated 'floating Trust'"; and, "commingling of trust assets is contemplated." *id.;* 7 C.F.R. § 46.46(c) (describing trust assets), and proceeds from other sources are not within the trust's rubric. *See Six L's Packing Co. v. West Des Moines State Bank,* 967 F.2d 256, 258 (8th Cir.1992) (holding that PACA debtor may prove that certain funds are not proceeds from produce sales and hence not part of trust assets).

PACA's trust provision has the precise effect Congress intended; namely, in the event the seller does not receive payment, the seller is elevated to a priority position above that of all the buyer's secured creditors. *See Sanzone–Palmisano Co. v. M. Seaman Enters., Inc.,* 986 F.2d 1010, 1012–13 (6th Cir.1993); *C.H. Robinson Co. v. Trust Co. Bank, N.A.,* 952 F.2d 1311, 1315 (11th Cir.1992).[1] The trust simply requires the produce buyer to hold the proceeds from its sales of produce and use them to pay suppliers before using those funds to pay its secured creditors or other liabilities. However, the unpaid supplier or seller loses the benefits of the trust protection unless it "has given written notice of intent to preserve the benefits of the trust to the [buyer] and has filed such notice with the Secretary [of Agriculture] within thirty calendar days of" three specified events. *Id.* § 499e(c)(3). Those events are:

(i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored.

*Id.* The Secretary's regulations require payment be made within ten days after the produce is accepted, 7 C.F.R. § 46.2(aa)(5), but permit the parties to agree to a longer term provided that term is no longer than thirty days. *Id.* § 46.46(f)(2).

**B. Account 143**

■ We affirm the district court's conclusion that the parties' agreement to extend the payment terms for account 143 beyond the thirty-day maximum allowed by the regulations deprives Lange of trust protection. In conformance with the provisions we outlined above, Lange and Lombardo executed a written agreement that complied with PACA and its regulations. However, they later modified that written agreement with respect to the deliveries under account 143; at that moment, an agreement complying with PACA no longer existed. There being no written agreement complying with PACA, Lange is prohibited from claiming PACA's trust protection.[2]

Lange correctly points out that PACA requires a written agreement be executed before the underlying transactions for produce take place. *See* 7 U.S.C. § 499e(c)(3)(ii). From this, it concludes that any agreements reached after the transactions take place are wholly irrelevant for PACA purposes. We reject this position because it allows the parties to recognize the form of PACA without complying with its substance. PACA imposes a trust upon the funds held by delinquent purchasers if a written agreement required

---

1. The creation of such protective mechanisms is hardly unusual. For instance, a mechanic's lien also allows a particular class of individuals (contractors and suppliers) to collect their money ahead of those with otherwise superior lien rights (mortgage companies).

2. Based on our holding on this issue, there is no reason to address the adequacy of the notice on the invoices and weekly statements.

payment within thirty days of delivery. Thus, at the time trust protection is claimed, there must exist a valid written agreement complying with PACA's terms. Though such an agreement once existed, it did not exist at the time trust protection was claimed, having been modified by the parties' subsequent written agreement[3] in such a manner that it no longer complied with PACA.

## C. Account 466

### 1. The Stall Transaction

■ The district court affirmed the denial of trust protection on account 466 because

> the credit extended to Lombardo under Account 466 was an open account "secured" by equity. When viewed in the context of the entire purchase-leaseback-option transaction, the $150,000 line of credit was effectively secured by the equity Lange acquired in the produce stalls. This conclusion is further supported by the fact that Lombardo's three-year option to repurchase its stalls from Lange could be exercised only if its debt with Lange was paid in full.

*In re Lombardo Fruit & Produce Co.*, 150 B.R. 941, 947 (E.D.Mo.1993). We are at a loss to understand what the transaction for the stalls has to do with the transactions for produce. The written agreement governing produce transactions was executed approximately nine months before the transaction for the stalls was contemplated. The agreement for the stalls does not affect or modify Lombardo's obligations under the earlier agreement. It does not, as suggested by Uni–Fin, grant Lombardo three years to pay for produce; instead, it allows Lombardo three years to exercise the option to repurchase the stalls and requires that it be current (as opposed to delinquent) on the produce accounts before exercising the option. The reasonableness of this provision is abundantly clear; if Lombardo had the financial wherewithal to repurchase the stalls, Lange did not want Lombardo to use those funds to repurchase the stalls if the produce accounts were delinquent. The justification for this provision is even greater given that Lombardo was already delinquent on account 143. Lange did not grant Lombardo three years to pay account 466 simply by contemplating the possibility that Lombardo might still be delinquent on account 143 or might become delinquent on account 466. Finally, we find no support for the conclusion that the stall transaction was anything other than what it claims to be—a purchase and lease-back. Even if Lange paid $150,000 less than the stalls were worth,[4] this does not mean that account 466 became transformed into a line of credit secured by that $150,000.

### 2. Course of Dealing

Uni–Fin cross-appeals the district court's holding that the parties' course of dealing is not relevant when considering whether the seller is entitled to trust protection. We agree with the district court's conclusion in this regard. In so doing, we join the other courts that have addressed this issue. *A & J Produce Corp. v. CIT Group/Factoring, Inc.*, 829 F.Supp. 651, 655 (S.D.N.Y.1993); *Mid–Valley Produce Corp. v. 4–XXX Produce Corp.*, 819 F.Supp. 209, 211–12 (E.D.N.Y. 1993).

■ Uni–Fin relies heavily on the bankruptcy court's conclusion that the parties' written agreement was a sham because Lombardo paid within the thirty day period only once. This factual finding is not relevant to PACA trust analysis for a variety of reasons. First, the parties had an agreement that met PACA's requirements. This agreement is a perfectly valid agreement, fully enforceable under contract law. The fact that, in the past, Lange has not demanded payment on time does not invalidate the contract. If Lange sued Lombardo for making a late payment, Lange's past failures to insist upon its rights under the contract would not be a defense to late payment. Similarly, PACA

---

**3.** This feature distinguishes this case from *Hull Co.*, in which we refused to accord any meaning to an oral agreement to extend payment terms beyond those specified in the written agreement. 924 F.2d at 781–82.

**4.** The reliability of this figure is questionable given that the transaction was not solely an exchange of property for cash. In return for the stalls, Lange gave Lombardo money, an option to repurchase, and a renewable lease.

does not impose an obligation on the seller to diligently enforce the agreement by, for instance, filing suit, filing for trust protection, or terminating business relations. A seller who chooses to eschew these remedies (which it might do to help the buyer work through its financial difficulties) runs the risk of losing trust protection for those particular transactions. This is evident in the case at bar; there are many transactions for which Lange cannot claim trust protection because they are more than thirty days past due and the notice was not filed. However, this does not mean that Lange should lose trust protection for those transactions for which PACA notice has been validly filed. The sole purpose of PACA is to protect sellers of fresh produce for payment of their accounts from the assets derived from the sale of the purchased produce in case of bankruptcy, liquidation or other financial distress as against the claims of secured creditors. By requiring notice be filed within a certain time, PACA contains its own consequences for non-diligence; there is no need to further deprive the seller of the trust benefits Congress intended to bestow. *See Hull Co.*, 924 F.2d at 782 (interpreting PACA in a manner that "best promotes the legislative scheme and the general purpose Congress has manifested").[5]

Secondly, we agree with the district court that a course of dealing analysis conflicts with this court's prior holding in *Hull Co.* In that case, we held that only written extensions, and not oral extensions, could validly extend the payment terms beyond those specified in the parties' written agreement. 924 F.2d at 781–82. If an express, oral agreement cannot be deemed to extend payment terms, we fail to see how something less than an express oral agreement—namely, the parties' course of dealing—can.

Thirdly, we note that PACA's trust provision is modeled on the one appearing in the

Packers and Stockyards Act ("PSA"), 7 U.S.C. §§ 196–97 (1988). *See, e.g., In re Fresh Approach,* 48 B.R. 926, 927–28 (Bankr. N.D.Tex.1985); H.R.Rep. No. 543, 98th Cong., 2d Sess. 2, 4 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 405, 407. In fact, the wording of the statutes is remarkably similar. Consequently, given that the parties' course of dealing is not relevant to PSA's trust analysis, *In re Gotham Provision Co.,* 669 F.2d 1000, 1007 (5th Cir. Unit B), *cert. denied,* 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982), the parties' course of dealing should not be relevant to PACA's trust analysis. *See C.H. Robinson Co. v. Turst Co. Bank, N.A.,* 952 F.2d 1311, 1315 & n. 2 (11th Cir.1992) (relying on *Gotham* to interpret PACA).

## III. CONCLUSION

The district court properly upheld the denial of Lange's PACA trust with regard to account 143 because the parties' written modification to their agreement left Lange without an agreement complying with the requirements for PACA's protection. However, the parties did have a valid written agreement with respect to account 466 that was not rendered invalid by virtue of their transaction involving the stalls. Furthermore, the parties' course of dealing is not relevant in determining PACA trust eligibility. Accordingly, we affirm as to account 143 and reverse as to account 466. The case is remanded to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.

---

**5.** The legislative history of PACA's 1984 Amendment clearly sets forth the purpose and need for the Legislation:

H.R. 3867 amends the Perishable Agricultural Commodities Act to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them. The

trust is a nonsegregated floating trust that would apply to the commodities, products derived therefrom, and any receivables or proceeds from their sale in the hands of the commission merchant, dealer of broker. H.R.Rep. No. 543, 98th Cong., 2d Sess. 2, *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 406.