**In re FRESH APPROACH, INC., Debtor.**

**Bankruptcy No. 385–30293–F–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

April 30, 1985.

M. Bruce Peele, Jones & Brutsche, Dallas, Tex., for debtor.

Bruce W. Akerly, Toby L. Gerber, Berman, Fichtner & Mitchell, Dallas, Tex., for Standard Fruit and Vegetable.

## MEMORANDUM OPINION

JOHN C. FORD, Bankruptcy Judge.

On 13 February 1985 Debtor, Fresh Approach, Inc., filed its petition for relief under Chapter 11 of the Bankruptcy Code. Debtor operated, and continues to operate as Debtor-in-Possession, a market featuring a variety of fresh produce and other foodstuffs. In the course of its operations Debtor had for several years purchased produce from Standard ·Fruit and Vegetable, Movant herein. Just prior to the filing of its petition for relief, Debtor ordered and received a number of shipments of various perishable commodities from Movant. Unfortunately, Debtor's financial circumstances were such that Movant's invoices remained unpaid long after they became due. Movant demanded payment but received no response. Fearing that its claim might be considered subordinate to claims of Debtor's secured creditors in bankruptcy proceedings, Movant sought to invoke the trust provisions of the Perishable Agricultural Commodities Act of 1930, as amended in 1984. *See* 7 U.S.C. 499e(c). Notice was sent to Debtor and to the Secretary of Agriculture, pursuant to the terms of the statute, on 5 December 1984. On 19 February 1985, Movant filed its Motion for Relief from Stay and for Turnover of Property Not Part of Debtor's Estate, alleging *inter alia* that the transactions giving rise to Movant's claim occurred after and were controlled by the amendments to the PACA. Debtor opposed the motion on the grounds that the amendments were not self implementing, that the implementing regulations took effect on 20 December 1984, and that because the transaction in question preceded this date, Movant was not eligible to invoke the trust provisions of the amendments. Both parties cite statements in the legislative history of the amendments in support of their contentions.

Not surprisingly, given the tender age of the amendments in question, there is no case law to which this Court can look for guidance. After careful review of the statute, the legislative history, and the regulations and rationale thereof as published by the Department of Agriculture, as well as the Department's own treatment of this particular case under its regulatory mandate, this Court concludes that the amendments were effective at the time of the transaction giving rise to Movant's claim. As to Debtor's request for a trial of the various factual issues to be resolved in connection with the motion, it is clear that the trust attaches to all of Debtor's inventory and proceeds thereof, and that the trust takes priority over the claims of other creditors of the estate.

## DISCUSSION

On 7 May 1984 President Reagan signed into law the amendments to the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499e(c), the purpose of

which was to impress certain agricultural commodities received by a dealer with a trust. The trust was to extend to all produce received, as well as the products or proceeds thereof, for the benefit of the unpaid seller. Produce sellers who abide by the notice provisions of the statute automatically preserve a beneficial interest in said trust to the extent payment is due but unpaid. From the comments presented in the legislative history it is clear that Congress intended to provide for sellers of produce the sort of protection against other creditors of a delinquent purchaser/dealer contemplated for livestock dealers in the Packers and Stockyards Act of 1921. *See* 7 U.S.C. § 196; H.R.Rep. No. 98–543, 98th Cong., 1st Sess., 4 (1983), reprinted in 1984 U.S. Code Cong.Ad.News 405, 407.

> This legislation would provide a remedy by impressing a trust in favor of the unpaid seller or supplier on the inventories of commodities and products derived therefrom and on the proceeds of sale of such commodities and products in the hands of the commission merchant, dealer or broker in the same manner that has been provided by "trust" amendments to the Packers and Stockyards Act adopted in 1976...... The trust impression by Section 5(c)(2) of this Act is made up of a firm's commodity related liquid assets, and is a nonsegregated "floating trust", which permits the commingling of trust assets.

*Id.*

As both parties have noted, the amendments enacted in 1984 contain no explicit effective date. They appear, on their face, to be self implementing, although section 499e(c)(3) does make reference to regulations to be promulgated by the Secretary of Agriculture in connection with the determination of notice deadlines where the parties have not otherwise agreed. Debtor has seized upon this reference, and the corresponding statements in the legislative history and regulations, as the basis for its assertion that the legislation was not self implementing, and that the effective date is therefore determined by the effective date of the implementing regulations.

Section 499e(c)(3) states, in pertinent part,

> The unpaid seller ... shall lose the benefits of this trust unless such person has given written notice of intent to preserve the benefits of the trust to the ... dealer ... and has filed such notice with the Secretary within thirty calendar days
> (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary,
> (ii) after expiration of such other time by which payment must be made as the parties have expressly agreed to in writing before entering into the transaction, *or*
> (iii) after the time the ... seller ... has received notice that the payment instrument promptly presented for payment has been dishonored (emphasis added).

It is significant that Congress phrased the three notice provisions in the disjunctive, rather than the conjunctive, thus creating three alternate means by which a seller in Movant's predicament might secure payment for produce delivered to a defaulting dealer. Had Congress listed only alternative (i), Debtor would be correct in stating that further action on the part of the Secretary of Agriculture is required before the statute could be implemented. Were this the case, this Court would be compelled to conclude that the effective date of the statute corresponded to the effective date of the implementing regulations. These circumstances, however, are not present. Congress provided three alternative means of preserving a beneficial interest in inventory impressed with a trust. Alternative (iii) does not involve the Secretary of Agriculture in any fashion whatsoever, except with respect to receiving notice. It is reasonable to assume that the Department of Agriculture need not promulgate regulations to permit it to receive its mail under these amendments; thus, no further action by the Department is required for the notice provisions of the statute to operate.

Similarly, alternative (ii) requires only that the seller give notice within thirty days of the deadline for payment set forth in the agreement between the parties. Again, the Department of Agriculture need take no action, other than to provide for the receipt of its mail, for the statute to operate. Given the passive role the Department is expected to play under alternatives (ii) and (iii), it is clear that Congress did not intend to condition operation of the statute *in toto* upon affirmative steps to be taken by the Department.

■ This conclusion finds ample support in the legislative history of the amendment. It is true, as Debtor asserts, that "[u]nder the bill the Secretary is required to establish, through rulemaking, the time by which the parties to a transaction must agree payment on a transaction must be made, to qualify it for coverage under the trust. An agreement for payment after that time will not be eligible to receive benefits of the trust." H.R.Rep. No. 98–543, 98th Cong., 1st Sess., 7 (1983), reprinted in 1984 U.S.Code Cong.Ad.News 410. In addition, the Secretary of Agriculture is given a mandate to issue appropriate regulations to further the goals of the statute. The latter, however, is worthy of examination in its entirety.

> *The legislation becomes effective on enactment, and thereupon outstanding existing transactions become subject to the trust provisions.* To ensure that all affected parties become aware of this legislation, the Committee expects the Secretary to take positive steps to keep these parties fully advised of the new statutory trust requirements, the implementing regulations and their ramifications.

H.R.Rep. No. 98–543, 98th Cong., 1st Sess. 8, reprinted in 1984 U.S.Code Cong.Ad. News 411 (emphasis added). Congress thus provided, in the same paragraph, that the legislation would be effective upon enactment and that the Secretary would keep interested parties apprised of further statutory or regulatory developments. It cannot be assumed that such juxtaposition was mere coincidence. Congress clearly intended the amendments to take effect immediately, notwithstanding the absence of any corresponding regulations. The Committee was unusually direct in this regard. Consequently, this Court has little choice but to conclude that Congress meant precisely what it said, i.e., that the provisions became operative upon enactment.

This conclusion is further buttressed by the Committee's obvious desire to bring within the scope of the amendment "all outstanding existing transactions". If Congress had intended to await the issuance of regulations by the Department of Agriculture, such language becomes, at best, a superfluous enigma. Debtor attempts to overcome this remarkably plain statement of Congressional intent with language from the Secretary's discussion of comments received during the rulemaking process. To the extent Debtor may be correct, it is obvious that Congressional intent must override inconsistent administrative interpretation. Debtor hypothesizes that the statements in the statute and legislative history, "if taken literally, would result in the imposition of a trust upon acts which occurred prior to the date of the statute". Fresh Approach's Memorandum in Response to Standard Fruit and Vegetable's Motion for Relief from Automatic Stay (hereinafter Debtor's Brief) at 6. It does not strike this Court as uncommon that statutes be taken literally, nor does it seem an untoward presumption that Congress chooses its words carefully and with full knowledge of its intentions and goals.

Debtor cites a number of authorities for the proposition that "statutes are only prospective in their operation unless the contrary is clearly or unequivocally expressed." Debtor's Brief at 4. *See United States v. Perry,* 431 F.2d 1020 (9th Cir. 1970). With this the Court has no dispute. Had Congress equivocated or been unclear with respect to its intentions, this Court might be inclined to accept Debtor's position. In this case, however, the Court would have difficulty imagining a clearer or less equivocal expression of intent to include presently existing transactions

within the scope of those transactions covered by the amendment.

As regards the position of the Secretary with respect to the applicability of the amendments to transactions consummated prior to the effective date of the regulations, it is true that the Secretary stated, "... the amendments can not be implemented until the regulations are effective." 49 Fed.Reg. 45,735 (1984). To the extent the amendments create a *public* cause of action, in the nature of enforcement by the Secretary of the trust and licensing provisions, the Court agrees that the effective date of the regulations would control. The case at bar, however, concerns a *private* cause of action, whereby one commercial entity seeks to enforce its statutory rights against another. Insofar as Movant has conformed to the statutory notice provisions to which administrative involvement is irrelevant, this Court concludes that the amendments are applicable to this transaction.

■ The Court also notes that in its explanation of the regulations, and in the regulations themselves, the Department states "... all transactions in perishable agricultural commodities *existing as of and entered into on or after* the effective date of the regulations will be subject to the trust requirements ... [t]he regulations fulfill the Congressional intent as to the application of the statutory trust provisions." 49 Fed.Reg. 45,737 (1984) (emphasis added). *See also* 7 C.F.R. 46.46(a) (1984). It is thus clear that the actual regulation promulgated by the Department calls for application of the trust provisions to transactions occurring before the effective date, as well as those entered after said date. Moreover, in a letter filed with this Court by the Secretary of Agriculture, it is stated, "Standard Fruit and Vegetable Company, Inc., Dallas, Texas, one of the produce creditors of Fresh Approach, Inc., has filed a timely notice with the Secretary of its intent to preserve its trust benefits .... [i]t is the position of the Secretary that absent valid defenses this creditor is entitled to full reimbursement from the trust fund ahead of all other creditors." On balance, then, this Court is faced with a direct statement by the Secretary that this transaction is covered by the amendments; a provision in regulations promulgated by the Secretary including existing as well as subsequently entered transactions within the scope of the regulations and the amendments; and a statement by the Secretary that the amendments can not be implemented until the effective date of the regulations. Because this case concerns a private, rather than a public, action to enforce the trust provisions of the statute, this Court holds that application of the amendments to the present transaction is entirely consistent with the intent of Congress as expressed in the legislative history and as inferred from the terms of the statute.

This Court notes that the notice sent by Movant on 5 December 1984 would not have complied with the provisions of the statute had it not been for the saving retroactive language of the regulations. As discussed earlier, the statute provides three alternative means of notice. Alternative (iii) did not apply in the present case, as the dispute does not concern a payment instrument that was returned unpaid. The first option was unavailable at the time notice was actually sent, as the Secretary had not yet begun to enforce the new regulations. The second option was unavailable for the reason that no written agreement had been entered into *prior* to the transactions at issue. While the invoices submitted by Movant to Debtor *after* the delivery of the produce did set forth a payment deadline, there is no indication that such a deadline had been negotiated and agreed to *before* the deliveries. Under the express terms of the statute, such a predelivery payment arrangement was essential to remove the transaction from the regulatory reach of the Department. Because there was apparently no such predelivery agreement, Movant had to depend upon the period established by the Secretary for notice purposes.

The times for prompt accounting and prompt payment are set out in Sections

46.2(z) and (aa). *Parties who elect to use different terms for payment must reduce their agreement to writing before entering into the transaction* and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction.

7 C.F.R. 46.46(f)(1) (1984) (emphasis added). *See also* 49 Fed.Reg. 45,738 (1984); H.R. Rep. No. 98–543, 98th Cong., 1st Sess. 6, reprinted in 1984 U.S.Code Cong.Ad.News 409. Fortunately for Movant, notice was in fact given within the time frame contemplated by the regulations which, as noted earlier, apply to this transaction as one existing on their effective date. Even the Department of Agriculture, in its own administrative proceedings against Debtor and in papers filed with this Court, has agreed that Movant complied with the regulations and the amendments. As a result, Movant is not precluded from establishing its beneficial interest in the trust.

■ Because these conclusions are drawn in connection with a motion for turnover of property not part of Debtor's estate, the Court acknowledges the position of the Secretary that "[i]f a buyer or receiver declares bankruptcy ... trust assets are not to be considered part of the estate to be distributed to other creditors or sold unless all trust beneficiaries have been paid." 49 Fed.Reg. 45,738 (1984). The statement is supported by the preamble to the amendments, which clearly indicate Congressional intent to move the unpaid produce creditor to the head of the line with respect to any distribution of a produce purchaser's assets. *See* 7 U.S.C. § 499e(c)(1). It is equally clear from the legislative history that the Committee intended the amendments to provide a remedy for the seller of perishable commodities to an eventual debtor in bankruptcy, wherein the former, as an unsecured creditor, would otherwise be forced to await satisfaction of the claims of those creditors with security interests in inventory and proceeds. *See* H.R.Rep. No. 98–543, 98th Cong., 1st Sess. 9, reprinted in 1984 U.S.

Code Cong.Ad.News 413. Most importantly, the Committee clearly indicated that courts could look to precedents established under the Packers and Stockyards Act, 7 U.S.C. § 196, for guidance. H.R.Rep. No. 98–543, 98th Cong., 1st Sess. 12, reprinted in 1984 U.S.Code Cong.Ad.News 415. Applying such precedents to the case at bar leaves little doubt as to the course this Court must follow. *See In re Frosty Morn Meats, Inc.*, 7 B.R. 988, 1005 (M.D.Tenn. 1980); *In re G & L Packing Company, Inc.*, 20 B.R. 789 (Bkrtcy.N.D.N.Y.1982), *aff'd* 41 B.R. 903 (N.D.N.Y.1984). Under these authorities, it is clear that the inventory and proceeds impressed with the trust of 7 U.S.C. § 196, and by analogy 7 U.S.C. § 499e(c), are not part of the estate and are held for the sole benefit of the unpaid sellers, of which Movant is a member.

■ Similarly, there is no question remaining as to which assets of the Debtor the trust affects. "The trust impressed by Section 5(c)(2) of this Act is made up of a firm's commodity related liquid assets, and is a nonsegregated 'floating trust', which permits the commingling of trust assets." H.R.Rep. No. 98–543, 98th Cong., 1st Sess. 4 (1983), reprinted in 1984 U.S.Code Cong. Ad.News 407. As the Committee noted,

> Under this provision there is no necessity to specifically identify all of the trust assets through each step of the asset accrual and disposal process. Since commingling is contemplated, all trust assets would be subject to the claims of unpaid seller-suppliers ... to the extent of the amount owed them.

H.R.Rep. 98–543, at 5; 1984 U.S.Code Cong.Ad.News 409. *See also* 49 Fed.Reg. 45,738 (1984); 7 C.F.R. 46.46(c) (1984). Accordingly, all of Debtor's produce related inventory and proceeds thereof are included as assets of the trust to the extent of the amount of Movant's claim.

Unfortunately, the extent of Movant's claim is subject to some dispute. Various estimates have been brought to the Court's attention, ranging from $96,000 to nearly $110,000. While this Court has concluded

that the stay should be lifted and assets surrendered to the extent of Movant's claim, more specificity as to the amount of said claim is required. Accordingly, Movant is directed to obtain a trial setting to determine the factual issues remaining as to the amount to be allowed.

To conclude, then, this Court is of the opinion that the amendments of 7 U.S.C. § 499e(c) do in fact apply to this transaction between Debtor and Movant; that Debtor's inventory, and proceeds thereof, is therefore to be considered held in trust for the benefit of Movant; that as the corpus of this trust, Debtor's produce-related assets and proceeds thereof are not part of the Debtor's estate; and that the same should be released to Movant, in an amount to be determined at a later setting, subject to any valid claims or rights of set-off Debtor may have against Movant. It is so ordered.